We'll hear argument first this morning in Case 15-1391, Expressions Hair Design v. Schneiderman. Mr. Gupta. Mr. Chief Justice, and may it please the Court. This case is about whether the State may criminalize truthful speech that merchants believe is their most effective way of communicating the hidden cost of credit cards to their customers. By design, New York's law suppresses the message that you pay more. Sotomayor, your two groups of Petitioners, one wants to just give a cash price without any information about the surcharge, and the other, I thought, wanted to give two separate prices. So everybody doesn't want to give truthful information about the surcharge. Schneiderman No, they do, Your Honor. They all want to do the same thing. I think what you're referring to is that some of them are doing different things now. One of the Petitioners, Expressions Hair Design, is engaging in dual pricing. They're charging two different prices, one for cash, one for credit. But they're trying as hard as they can to describe that as a discount so that they comply with the law. The other Petitioners right now are refraining from dual pricing altogether because they don't want to run the risk of failing to comply with this regime. But if we win this case, all of the Petitioners would like to charge two different prices, for cash or for credit, and they would like to be able to characterize the price difference as a surcharge for using a credit card. Sotomayor That's not quite what I understood, but your adversary can tell me. Sotomayor Mr. Gupta, what speech precisely do you think is being restricted? Gupta The message that when you use a credit card, you're paying more. And to be more precise, I think if you look at Joint Appendix 103 through 104, you'll find there the supplemental declaration of Expressions Hair Design, where they say exactly what they'd like to do. And if you look at the yellow brief, it's page 1 of the yellow brief, we have a chart. And what we'd like to do, ideally, is describe the pastrami sandwich as $10 and then tell you that it's going to cost a certain percentage more, 2 percent more, to pay with a credit card. Kagan Well, I guess that's why I said, like, what speech precisely? And you said the message that you're going to pay more if you use a credit card. But, you know, as this statute is not written in terms of speech. It's written in terms of imposing a surcharge. And let's say that somebody – let's say that there's a merchant, and the merchant charges – the list price for something is $1. And a person comes up to the cash register and offers a $1 bill. And the cashier says, oh, no, for you, it's 95 cents, because I impose a surcharge for people who use credit cards, right? Now, would that violate this law? Waxman You know, I don't know, and part of the difficulty is the reason we have a vagueness challenge. Kagan I don't know. How would it violate the law? Waxman I don't think it would. I don't think it would. And certainly, the State hasn't taken that position. I can't – Kagan You don't think it would? Waxman I don't think it would. Kagan Even though you're describing something as a surcharge, because – the reason it wouldn't violate the law is because the conduct is – you know, it fits the law, right, that essentially you're not imposing a surcharge on credit card users. Whatever you call it, however you describe it, you're not imposing a surcharge on credit card users. Roberts Well, I think the way this law works is that you can engage in precisely the same conduct. You can charge the two different prices, one for cash, one for credit. And what runs afoul of the law is describing the price difference one way, as a surcharge versus credit. And you know that because – Kagan You see, that's – you said that again. And I think my hypothetical was designed to show that that's just not right. I mean, I can imagine ways in which you might say that this is restricting speech, but that's not it. Because as long as the price listed is the higher price, is the price that a credit card company has to pay, as long as that's true, you can describe it any which way you please. And you can describe it in terms of imposing a surcharge or charging credit card customers more, and it still is not going to violate this law. Waxman I don't think so, Justice Kagan. And I think in your hypothetical, the merchant hasn't telegraphed to the consumer at the same time the two prices, right? That's not what our clients want to engage in. If New York wants to continue to enforce this statute against deceptive practices or false advertising, we have no problem with that. This is an as-applied challenge, and the merchants in this case want to engage in truthful speech. They want to disclose more. They want to tell you more. They want to impose a surcharge. What's the problem with saying you're too young to know what the OPA was? Waxman I think so, Justice Breyer. Breyer It's called the Office of Price Administration. Ken Galbraith ran it for a while. And what they would do, he said, is they'd go around and they'd smell what the right price was. And after they said that in World War II, you couldn't charge a higher price. Would you have come in and said, Ken Galbraith says you can only charge $13 for this item? It violates our free speech. Because we want to charge $15. Roberts No, absolutely not, Justice Breyer. Breyer And very well, what this statute says is you can't impose a surcharge. Very well, you can't. And you want to. What's that got to do with speech? I grant you all business activity takes place through speech. So explain to me what it's got to do with speech. Waxman And I agree. If you look at this statute, it doesn't scream First Amendment problems. Breyer Not only doesn't it scream it, I want to know, unless you want to say whenever a businessman is regulated in what he can do or she, that violates the First Amendment, or at least potentially, because they do it through speech. Waxman Right. But this is a regime that says you are allowed to call it a surcharge.  And the enforcement treaty you can't call it a surcharge. Breyer But this statute, my statute that I'm reading says you can't charge a surcharge, but you can charge a discount. Now, I know Paul McAvoy, I hate to bring up these long-gone names, but he was an economist with whom I wrote a book. And he would have said what you said, that, well, a discount and a surcharge are the same thing economically. But we live in a world that not everybody is an economist, and many people think it's quite a different thing. And there are a lot of studies in this thing, you know, that said it was a different thing. But it tells what they can't do. Waxman Right. Certainly consumers react to the way price information is communicated. Breyer No, not the way. You have a regular price. If you go above the regular price, it's a surcharge. If you go below the regular price, it's a discount. Waxman But in this case, both sides agree the way the regular price is defined is in relation to how you communicate that. Look at page 28 of the red brief. They define regular price based on how it's communicated. I think both sides come to this case with two propositions that they agree on. We all agree that the regulation of prices, the kind of price regulation you're talking about, Justice Breyer, is economic conduct that doesn't implicate First Amendment concerns. We also agree, we all agree and know from Virginia Board that communicating price information to consumers is protected by the First Amendment and is at the heart of the commercial speech doctrine. Alito Can I go back to Justice Kagan's hypothetical? It doesn't address the situation where dual prices are posted, but it addresses a situation where there is a dual price regime. Some consumers are going to pay more, some consumers are going to pay less. And in her hypothetical, she says the sticker price is the higher price, and then when the cash purchaser comes to the cash register, the purchaser gets a pleasant surprise. No, you are going to be charged less. But I thought your argument was that this, if that is the correct interpretation of the statute, and I don't really know what this statute means and we don't have a definitive interpretation, but if that is the correct interpretation of the statute, what New York State has done is to force the merchant to say, to post a particular sticker price, namely the higher sticker price, as opposed to the lower sticker price. So that is mandated speech. Isn't that your argument? I think if New York, it's not mandated speech in the sense they haven't told us precisely what to say. Alito Under that interpretation, if it's okay to post the higher price and nothing more, and if the higher price is the credit card price, they are forcing the merchant to speak in a particular way. I think what they are doing is they are forcing the merchant to speak in a particular way in the sense that you have to characterize the price difference a certain way in order to comply with the statute. Kagan But you see, Mr. Gupta, this exchange, I mean, I think that these are two very different theories of what makes this a speech restriction. And I guess the reason I asked my question was because Justice Alito's theory does not appear to be your theory, and I want to know which theory we are really talking about here. Justice Alito's theory is that when the legislation says you have to post the higher price, that that in itself is a restriction on speech. And that's an interesting argument, and maybe he's right about that. I don't know. Now, your brief took a different position. Your brief essentially said the problem is that this legislation affects the way a cashier or somebody in a store just affects the way they describe transactions generally. You know, and the cashier is going to be worried that she can't say to the customer, you charge more if you use a credit card. And I guess I wanted to know which theory is your theory. Gupta I think our theory is what you just described. Kagan The latter one. Gupta But I think Justice Alito's not wrong, that it would certainly implicate First Amendment concerns if the State were to say, here's how you have to display your prices. But that would be, it could be, theoretically, a disclosure regime, right? And that's what the Solicitor General has posited, a disclosure regime that you could use. Sotomayor Counselor, can I – I'm part of, I'm a little bit like Justice Alito and less than Justice Kagan. I'm not sure what you or anybody is saying about this statute or what it means. But not because it's necessarily vague. I just don't see anything about speech in the statute. The statute simply says, No seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means. To me, it's very simple, one price for everything. You walk in, forget about the – I don't know where they get the discount from. Or that this statute permits that. Because what it says on its – to me, on its plain terms, is one price. And you told Justice Breyer that that was okay. It certainly would be – I'm hard-pressed to see if that's the interpretation given to what I view as the plain meaning of the statute, that that would be unconstitutional. But this is not a statute that functions in a vacuum, right? And the other States that enacted statutes at the same time, some of them put in their text, a surcharge is okay – a surcharge is not okay, a discount is not okay. New York didn't, but everyone has agreed that it has been interpreted in parallel  And it – Sotomayor Well, this is a really nice agreement, except the State below had two different interpretations. But the State has never wavered from its interpretation that framing the price difference as a discount is perfectly permissible under this regime. And you don't have to take my word for it to look only at the text of the statute. You can look at the way it's been enforced. So the statute was enacted in the 1980s. A few years thereafter, there was the first reported criminal prosecution under that statute. And in that case, a gas station owner had the posted prices, cash and credit. But the – what caused the criminal prosecution is that the cashier made the mistake of describing the price difference as a nickel more for using a credit card rather than a nickel less for cash. It was that speech, and that speech only, that triggered the criminal prosecution. And the prosecutor in that case and the judge all agreed that's what the statute meant. Sotomayor And you tell me that that's what the State's going to tell me, that if they post credit card price $2.10, cash price $2, that if the cash – if the person comes to the cashier and gives them a credit card, the cashier is going to say, you know, you're paying a surcharge of 10 cents, you're going to be prosecuted for that. Well, the State can try to run away from the enforcement history, but I think it would be very difficult to run away from the most recent enforcement history. The State went after 50 or so merchants in 2008 and 2009. They were sweeps. You have in the joint appendix declarations from merchants who are caught up in that sweep, lawyers, the trade association head. And what happened in all of those cases was that somebody called up on the phone from the Attorney General's office pretending to be a customer, and they said, what are your prices? And those merchants said, well, it costs, you know, say, $10 to buy the heating oil, and then, you know, this many cents more to pay with a credit card. And that was the only speech that they engaged in. They disclosed their prices. There's nothing deceptive about that. And they were – they were targeted by the Attorney General's office. And then they asked the Attorney General, how do we comply with this statute? And you'll find that at joint appendix 107. The Attorney General's office didn't say, disclose the total credit card price. They said, you have to frame it as a discount. You can charge more all you want. And I think that shows that this speech is regulating nothing – this statute is regulating nothing but speech. Roberts Does your argument depend upon the fact that there is no difference from the consumer's perspective if he sees this product is $100, come in and buy it, and then he gets to the cash register and there's a surcharge, you know it's $103, and it's $103 and it's $100, he goes to the cash register, pays cash, and they say, well, happy you, it's $97. And is your argument that a consumer sees no difference in those two situations? Gershengorn  Our – I would argue – Roberts So do you agree with the State that that is – could be, to some extent, misleading as far as the consumer is concerned? Gershengorn I think it's really important to understand that this is an as-applied challenge. And the only thing we are challenging is the application of this statute to merchants who want to simultaneously, prominently disclose both the cash price and the credit card price, but want to frame the credit card price as a surcharge. Anything else is not within the scope of our as-applied challenge. Roberts Under your – under your argument, I just want to understand, I understand you say, well, that's – it's not this case, but under your argument, how would you analyze the – the hypothetical that I posed? Gershengorn I think if the State wants to have a regime where they think it's a deceptive practice because you aren't telling people the – the higher price or the – the price difference at the same time, and that people are hoodwinked or there's bait and switch, they're perfectly free to do that. It's odd that there's a – a criminal regime in this case, and false advertising law certainly makes it possible to do that anyway. But if the State wants to enforce this statute that way, we have no problem with that. They can continue to do that. If you look at Joint Appendix 144, you'll see an example of a bait and switch scenario like that. The odd thing there is that the State didn't invoke its Section 518, the no surcharge statute. They invoked the false advertising statutes, which – which suggests that this statute has something else in mind. And then – Alito I must say, when I first read this statute, without knowing anything about the background with the Federal statute or reading the briefs or the Second Circuit opinion, I interpreted it the way Justice Sotomayor did, that it mandates a single price. Now, that may be a – an uninformed interpretation, but I – I feel somewhat uncomfortable about ruling on the constitutionality of this statute without knowing how the Court of Appeals, the New York Court of Appeals, would interpret the statute. So why shouldn't we certify that question of interpretation to that court before we plunge into this First Amendment issue? Well, the State of New York didn't ask for certification below. Believe it or not, you know more about the New York statute than you know about any of these statutes. And the other courts that have confronted the Florida statute, the California statute, they had no problem striking them down without an enforcement history. They all have been understood to mean the same thing. And – and I think, you know, what you said, what this Court said in Sorrell is that plaintiffs in a First Amendment challenge have a right to prompt adjudication despite ambiguities in State law. And so this Court used to abstain in First Amendment challenges where there was some ambiguity in State law. I think the – the modern trend in this Court's cases has been to take a crack at it. And, you know, you have the enforcement history. You know what this statute means on the ground. If you had a content-neutral statute and the State were enforcing it consistently in a content-discriminatory way, you wouldn't say, well, we don't know what the statute means, you can't challenge that. In effect, when you bring an as-applied challenge, you're bringing a challenge not just to some words in a statute book, but also to the way that the statute is being enforced. And the injunction in an as-applied challenge would look the same whether you conceptualize that as a challenge to the statute as written or to the State's enforcement policy. Either way, we want an injunction that says – Breyer, but now this is exactly what's worrying me. The State, you say, told some merchants that they cannot say that they have a surcharge. Is that what it is? Is that the problem? You can't do that. But they did say you can do exactly the same thing. Exactly. They said you can charge all you want. Did they say do exactly the same thing? Yes. Or did they say you can have a discount? They said you can charge more all you want. You can charge more all you want. You just have to call it a discount. Did they say call it a discount? Yes. Breyer, so what we are doing here is we are taking all the principles which are important of a First Amendment case, and we are going to apply them, speedy determination, not as applied, you know, across the board. There are lots of protective things. And we are diving headlong into an area called price regulation. It is a form of price regulation, and price regulation goes on all over the place, in regulatory agencies. And so the word that I fear begins with an L and ends with an R. It's called Lochner. And there we go, using the First Amendment as a tool to get at price regulation that enforcers will sometimes say the wrong thing, okay? So that's a very general question. But if you want to know what's worrying me, that's it. Justice Breyer, I understand the concern. I think it's a serious concern, but it's not a concern at issue in this case. And that's because this is not price regulation. This is the regulation of how prices are communicated. And I think that the joint the declaration in the Joint Appendix shows you that. When the State says to someone, you can charge more all you want, you just have to call it something different, that's not price regulation. That's the regulation of how prices are communicated. And I think here's the test, Justice Breyer, if you want to figure out, because we all agree that Virginia board is the law, right? Communication of price information is protected by the First Amendment. But we also all agree that price regulation is economic conduct. So you ask, can you come into compliance with the law simply by changing what you say without changing what you charge? And that is the scenario here. That's exactly what the state told those merchants. They said, you don't have to change what you charge. Charge the same thing. Just change what you say. Kagan, you're putting really a lot of emphasis on a few cases in which prosecutors described the law in a certain way. But the law as written doesn't really do any of the things that you're saying. I mean, Justice Alito was right. The law as written actually can be read, and Justice Sotomayor said this before, as just requiring a single price. Now that's something that none of the parties here say. But if you just look at the law, that's what the law says. Let's take that out of the picture. Even then, the law can say, the only thing that we're requiring is that you list the higher price. That's the only thing that we're requiring. And then you can describe what you're doing any way you like. You can use the word surcharge. You can use the word more. You can use the word less. You can use the word discount. It doesn't matter, so long as you list the higher price, you're in the clear. And that, too, is very different from what you're saying, maybe from what the prosecutors said, but just the way you read this law, it just doesn't give, I mean, what these prosecutors say don't match what the law says. The law says, this is all about listing conduct, what you can charge. The law also means what it means on the ground, and the State agrees we have a credible fear of prosecution if we say what we want to say. So there's no dispute about that, that Document 51 in the district court, they conceded that if we say what we want to say, we could be prosecuted tomorrow. That shows there's a case in controversy about whether we could be prosecuted for truthful speech. Well, I think New York is saying in its brief that that's not the case, that you can say what you want to say, that you can call this a surcharge, that you can communicate in the way you want to communicate as long as your listed price is the credit card price. But that makes it impossible. I mean, that makes it impossible to frame the price as a surcharge because that normalizes the credit card price. It makes that the baseline price, and that effectively defines away a surcharge. And that's been the purpose of this. Sotomayor, you say the Federal law was unconstitutional as well. I think the Federal law was unconstitutional, too. We don't have to win that fight to win this case. I also – Were there any prosecutions under the Federal – There were not. And the reason is that the Federal Trade Commission, the Federal Reserve Board, and the consumer groups all opposed that regime because they thought it hid the cost of credit from consumers. There was never any enforcement. But you can look in the brief, blue brief at pages 11 through 13. We've tried to lay out how that regime worked. And I don't think it is the way the Solicitor General has characterized it. You cannot find any regulations from the time that the Federal regime was in effect that said all you have to do is list the highest, you know, the credit card price. That would look like a disclosure regime. And I think if it were – Is there – as far as discounts are concerned, is there some protection that the merchant can offer a discount? That the merchant can offer a discount? In other words, can they do that under this statute? Is that – No. I thought that there was some legislation that permitted. There is Federal legislation that says that it is a violation of the statute to have private ordering that forbids a discount. And that's why what you had, Justice Ginsburg, were contract rules that made it illegal for merchants to frame the price difference as a surcharge. Those contract rules were rescinded in 2013 in the face of antitrust scrutiny, and that's what led to this litigation. If there are no further questions, I'll stop. Kagan. Kagan. I'm sorry. Can I – you said something very interesting. Yes. You said if you take this statute, if you understand the statute, to just mean that the listed price has to be the credit card price, that looks like a disclosure regime. Could you explain that? Sure. I think a disclosure regime would look very different. It would – it wouldn't be a hidden, accidental disclosure regime. It would tell you exactly what it was requiring, right? And you wouldn't have any confusion. And then you would have to probably analyze that under Zowder, and you would ask a few questions. Is it specifically price – precise, that merchants have some warning or guidance? Is there some evidence that it's furthering some anti-deception interest? We do math all the time. We know that we can add the sales charge as a percentage, the service charge on a restaurant menu. Nobody thinks that that's a problem for consumers to do math. So why in this one place are they requiring the total price? Could it be because they want to suppress the message that merchants want to get across? Is it unjustified or burdensome? Is it possible for merchants, if they have to frame only one price, to do it this way, or is it going to dissuade them from getting their message across? And then finally – Thank you, counsel. We'll afford you a minute for rebuttal. Mr. Feigin. Thank you, Mr. Chief Justice, and may it please the Court. I want to focus on what I take to be the core of the First Amendment dispute between the parties, which I think centers around a merchant who, for example, wants to label a soda as costing $1.95 with a 5 percent credit card surcharge. And the question is whether the State can require the merchant to specifically identify a price of $2.05 before charging a customer who wants to use a credit card that amount. A law like that is very similar to a law that simply regulates pricing or requires a merchant to honor their offers to enter into a contract of the sort that we normally wouldn't think is subject to any First Amendment scrutiny. We nevertheless think that the requirement that everyone seems to agree is imposed here is best viewed under this Court's precedence as a speech regulation, because in effect it's prescribing how the merchant communicates an otherwise lawful pricing scheme. But to the extent that New York's law, like the Federal law, simply requires a disclosure in dollars and cents form of any higher credit card price in circumstances where the merchant has decided to display the lower cash price in dollars and cents form, it's a perfectly valid consumer disclosure law under this Court's decision in Coudera. Let me address the other point. Sotomayor, could you get more concrete for me? Take the list of four ways that they would like to advertise in the reply brief. Which ways do you think or would the New York law potentially or actually make any of this conduct illegal? Your Honor, I don't think I can answer that question as to the New York law. I don't think we lack a definitive interpretation from the New York Court of Appeals. I think much of the dispute between the parties, as the first 25 minutes of questioning revealed, involves what the New York law actually does under particular circumstances. I can answer that question on the assumption that the New York law tracks the former Federal law, which the only thing the Federal law actually did, once you trace through the definitional sections, was to require, as I was saying earlier, disclosure in dollars and cents form of a higher credit card price when the merchant has decided to increase the cash price. Sotomayor, if that's what this law means, which of these four ways of advertising would be permissible and which would be unpermissible? Option A, where it's a $10 cash price, $10.20 credit price, would be fine. Option B, where it's $10 cash price, $0.20 surcharge per item added to credit card purchases, would not be permissible. You'd have to actually disclose in dollars and cents form. This would be $10.20. Sotomayor, you would have to say $10.20. Correct. And I'd like to say that's regulating speech. It's not regulating price, because it's the same price, whether I can do that math. That is why we think that this is better viewed as a speech regulation under this Court's precedents. But let me explain why I think it's a reasonable disclosure. Option C, Your Honor, which is $10, 2 percent surcharge, would be the same as option B. You'd have to actually say $10.20. And then option D, which is $10.20, 20-cent discount for cash purchases, is fine because you're disclosing to the consumers the highest possible price that they would have to pay in dollars and cents form. And your understanding of why it is a speech regulation is because it affects the way you list prices. Is that right? That's right, Your Honor. So a law, for example, that simply required a merchant who made a particular representation that the price of this item is $1.95 and required that merchant to honor and that was all the merchant said, didn't say anything about surcharges at all. And the law simply required the merchant to honor that price when the consumer gets to the cash register. That's an economic regulation. That's just a regulation that is regulating pricing or contract offers. But the law here, I think, everyone agrees, does something a little bit more. In options B and C that I was just discussing with Justice Sotomayor, you can have a price tag that does reveal the existence of a surcharge expressed as a mathematical formula. And the law would say that's not good enough. You have to actually list it as a price. If I could, I'd like to address why that's constitutionally permissible. Kennedy, do you have a position as to the constitutionality of prohibiting options B and C in the Pastrami sandwich example on the page? Well, to the extent, Your Honor, first of all, I wouldn't characterize it as prohibiting options B and C, but simply requiring an additional disclosure. It has to finish off the math problem for the consumers and tell them that the credit card price is $10.20. The reason that's permissible constitutionally under Zouderer is that I think it's important to keep in mind the legislatures are legislating against a backdrop where there isn't necessarily any specific requirement at all to even disclose the existence of the surcharge. And I think for two reasons. That's a very patronizing approach. I mean, you're saying in B when it says it's $10 cash, it's $0.20 surcharge that they've got to do the math and say, by the way, that's $10.20? And let me explain why, Your Honor. I think there are two good reasons why that has to be done. First, if you're or why it's reasonable for a legislature to decide that if it's requiring a disclosure of the fact that the credit card price is going to be higher, it can require that disclosure to be made in dollars and cents form rather than a mathematical formula. First, a price in cash is not enough, even if it's in cash, if they say that it's   $10 and $0.20 surcharge, that violates the statute. Your Honor, if all they said was $10 price and $0.20 surcharge, and they don't say $10 and $0.20 credit card price, that, as we understand it, would be a violation of the Federal statute. But let me please explain why. If that, if B or C, as stated, are a violation of the New York statute, in your view, is that a violation of the First Amendment? It is not. And I think for two reasons. Kennedy, even though this is truthful information. All it's requiring, Your Honor, it's not prohibiting them from saying what's in options B and C. It's requiring a further disclosure in dollars and cents form. I think there are two reasons why Congress or the New York legislature could permissibly require the disclosure to be made in dollars and cents form. First, that's the most easily digestible form in which people receive prices. It allows for easy comparison of prices and doesn't require the consumer to complete a math problem. Second, I think this directly to you. Roberts, you're saying that the American people are too dumb to understand that if you say $10 plus a $0.20 surcharge, they can't figure out that that's $10 and $0.20. And the second reason, Your Honor, I think addresses that concern directly. Which is that there's, which is that there's an administrability concern here. An administrability concern. Once you start allowing mathematical formulas, you can get into a debate about when the formula becomes too complicated for your average consumer. So you could imagine a sort of question. Roberts, it's too much to say $10 plus $0.20. I suppose it's a mathematical formula, but it's for second-graders. First of all, it would be hard to do that. Kagan, that if you said $32.46 plus 2 percent, then you really are requiring people to do some work, and you'd rather just have them know that it's, see, I can't do it that fast. Right. Your Honor, and you might also start. Well, all right. I agree that percentage. I agree that that's point C, that's not B. I agree that a percentage is more complicated. But $0.20 and $10, that's not too complicated, unless you're taking a very patronizing and condescending view of the capabilities of the American consumer. I think, Your Honor, under Zauder, Congress or the New York legislature is entitled to draw clear lines. I think it becomes more complicated if you show up at the store and you want to buy 17 things than if you're just buying the one thing. That increases the complexity of the math problem. And it would be much harder to write a law that allows certain formulas but not certain other formulas. You could imagine a store that says, if you buy an – here are our prices in cash. If you buy an item in credit, we're going to charge you a surcharge equal to the percentage that is the fifth digit of pi. The subset of the population – Yes, I'll give you that. That takes a little longer to figure out. But you're saying that it violates the law if it says $10 plus $0.20. Well, I think, Your Honor, they're entitled to have a bright-line rule. You could have a price that's a little bit – that creates a harder math problem of the sort that Justice Kagan supposed. And, again, you could also be buying many items at once. You could have only a certain amount of money that you want to spend and have trouble figuring out what you're going to be able to fit under that budget. And it makes for comparison pricing much easier. Can I ask you a different question? It does – this does not look like a disclosure requirement. It just – I mean, one way to understand this is exactly what you said. It requires disclosure, whether everybody needs that disclosure, whether only a few people need that disclosure in the $10.20 case. But it requires disclosure to make sure that everybody is on the same page in terms of knowing prices. But if you look at the language of the statute, it just doesn't look like that. And if we're going to say that something's a disclosure requirement and so subject to a lesser form of First Amendment review, shouldn't the State be making clear that that's what this is? You're – may I answer, Mr. Chief Justice? Your Honor, I think the best thing for the Court to do here is the Federal law was clear. I think you can use the Federal law as kind of a baseline for discussing the issue, remand to the Second Circuit, and allow for the New York Court of Appeals to have a definitive interpretation of the law, because there's clearly some dispute about what the New York law does. Robertson, Thank you, counsel. Mr. Wu. Wu, Mr. Chief Justice, and may it please the Court. The plain text of New York's statute refers only to a pricing practice and not to any speech. The statute prohibits a seller from imposing a surcharge on a customer who elects to use a credit card. For sellers that list a single price, as nearly all sellers do, the application of the statute is straightforward. The seller may not add to its listed prices and instead must adhere to those prices if a customer decides to pay by using a credit card. Alito, could I just ask you a preliminary question about the division of litigation authority in New York State? Does the Attorney General or the Solicitor General have the authority under New York law to bind all of the district attorneys in the State to an interpretation of this statute? And has the Attorney General issued an official interpretation so that all of the district attorneys will be required to enforce this in the same way? So the Attorney General and the district attorneys are separate authorities under New York law. In this case, however, the relevant district attorneys for the counties where these cases have expressed their enforcement authority. Alito, that's a problem for me. How many district attorneys are there in New York State? There are many. There are many. So you tell us how you interpret this, but how do we know how all of these other district attorneys are going to interpret the statute? They may interpret it differently. Well, I don't think fundamentally there should be a debate about the statute here, and it's because a plain reading of the text here means reading what it means to impose a surcharge. But, you know, there does seem to have been a debate about what the statute means, because I look at some of this enforcement history and I think I don't really understand why this violates that law. And, in fact, you've walked away from some of that enforcement history in your briefing and said, look, the cashier can call it whatever she wants to call it, as long as the listed price is the credit card price. But that is contradicting some of this enforcement history, where a different understanding of this law was used. So how do we deal with that? Justice Kagan, I disagree that we are walking away from the enforcement history here. I think if you actually look at what the enforcement history looks like, especially from the Attorney General's office, that it confirms sort of the plain reading of the statute in a single price scheme. I mean, the heating oil company example, I think, is the clearest one. In each of those cases, when the investigator from our office called up and asked what is your price, they were given a single dollars and cents answer. You know, on page 106 of the Joint Appendix, they asked Parkside Oil, how much is a gallon of oil, and they said $3.45. And it was only when the investigator said, I'd like to pay by a credit card, that at that point, the oil company representative said, I'm going to impose a surcharge of an extra 5 cents per gallon, said on top of the previous price. And I think that pricing practice reflects the common-sense understanding of the word surcharge, which is an additional fee or charge on top of a baseline that the seller itself has established. Kennedy, but under your view, if the heating oil people had said it's $103 if you pay by a credit card, if you do not pay by a credit card, pay by cash, it's $100, that is lawful? That's correct. I mean, if the heating oil representative said that. Then it's a matter of how the pricing structure is communicated in its speech. Well, I mean, let me respond in this way, which is, of course, the definition or the determination of whether there's a surcharge, we'll look back to the seller's original pricing practices, because that's the meaning of a surcharge, is a difference from some previously conveyed price. But the First Amendment doesn't prohibit the State from using a previously conveyed price as a baseline for a price regulation. As the United States has acknowledged, a regulation that just said you shall adhere to your previously conveyed prices or even previously advertised prices is a perfectly understandable economic regulation that would be analogous to a condom. Kennedy Suppose in the heating oil example, they said it's $103, but cash is $100, and that's because we impose a surcharge. Would that be lawful? That would be fine. I take that to be similar to Justice Kagan's example about the $1 charge for a cup of coffee with a description of it as a surcharge. And the statute does not prohibit that scheme because at the end of the day, the listed price, which is in that case conveyed over the phone, is the same as a price charged to a credit card customer. And then you're answer to the reply brief example is the same as the Solicitor General's office? And do you have a concern the way it does that this statute could be read more broadly? So we – our answers are the same as to the four examples there, and we do not think it is read more broadly. I mean, one thing that is crystal clear from the legislative history here is that this statute does not carry out the same policies and same purpose as the Federal statute that had just lapsed. And the same history is present in all of the other States that have adopted a similar surcharge provision. Alitoso, then why didn't New York – I mean, New York adopted this against the backdrop of a lot of consideration at the Federal level. Why did it not adopt the Federal definitions? I can't answer that question because nothing in the legislative history explains why they did not. But the other States that picked up after the Feds didn't renew the statute. What did the other States do? Did they do what New York did, or did they copy the Federal statute? Well, the vast majority of them did not adopt the Federal definition. As far as I'm aware, only Massachusetts adopted the Federal definitions. And there are some exceptions where some of the statutes actually have a separate definition of a surcharge, which is just the plain meaning definition that we have And so all of these statutes are really – should be, we think, read similarly  Alitoso, if I had the authority to interpret the New York statute, which I really don't, and I saw that they copied part of a prior statute, but they deliberately omitted other parts of the prior statute, I would be tempted to infer that they had a reason for omitting the definitions, and that was that they didn't want to be bound by that, so they wanted something different. I don't think there's anything in the history that would support that interpretation, Justice Alito. And I will just say, part of the reason that they may not have felt it necessary was because, just as the Federal statute originally did not have these definitions for a period of many years, the legislature may have believed that the ordinary meaning of a surcharge is obvious enough that they didn't need the clarifying  Breyer, are you finished? Yes. Breyer, help me, I may be the only one that needs this help, but I do have this Lochner problem. One, if this – if I were a legislator, I would have voted against this statute. I think it does hide the cost. That has nothing to do with this. Two, I think that the reason we're having so much trouble is because it's so difficult, but not impossible, to distinguish between surcharge and discount. And if you want to distinguish, and they are different, words are very helpful. They're evidentiary. But what we're after is not the words. They are evidentiary of something. But that's all, almost, we have. Three, the fact that you've had the questions you've had, and both sides of the bench have had such trouble with this, to me, is strong evidence that the Court should stay out of this under normal First Amendment standards. Because if we don't, we are going to discover all kinds of price regulation all over the place that suffers to greater or lesser degrees from this kind of problem, and you'll have judges all over the country substituting for regulators and others in trying to regulate. That's where I'm coming from. Now, you tell me how to do it. That is, you tell me, given precedent, et cetera, what should we overrule or what should we narrow if, as I believe is true, these regulatory areas are areas that not normal First Amendment, tough, you can't do it, principles apply. Weakened forms might, because it applies everywhere in a sense, but it used to be rational basis. It used to be rational basis. But water has flowed over that dam or under that bridge or wherever. And so I want to know your best thinking on what you would do in terms of trying to write a rule of law that would favor you. I'm going to give two responses to that. I mean, the first goes back to the text of the statute and recognizes that this statute is not phrased in any way that touches on what we would ordinarily think of as speech. In contrast to, for example, the statute in the Milovitz case, which talked about regulating the advice that a debt relief agency would give to a potential client. This just talks about the imposition of a surcharge. Sotomayor, I can't look at this statute and rely on its words or make a judgment on its words because nothing of what you're saying it applies to is said on the face of this statute. You're asking me to take a lot of steps, which is start with the language of the statute, ignore it, and go to a Federal statute and apply its definitions. How many of them you haven't quite told me. How you differ you haven't quite told me. And but I'm going to assume the Federal definitions apply, even though none of them are used here. So I'm very confused why you're starting your answer to Justice Breyer by saying look at the statute and see what the words of the statute are doing. Well, if I could get to that in just one second and finish the answer to Justice Breyer's, is I think given the way the statute is phrased, the easiest way to dispose of this case is to recognize this as a direct price regulation that this Court in 44 Liquid Mart and other cases has held is not subject to First Amendment scrutiny. But it doesn't set a ceiling price. It doesn't set any price at all. It lets the merchant set the price. And the question is how that price is described. So I think it's quite different from OPA's ceiling prices, which says you cannot charge more than the ceiling price. Here, the sky is the limit for what the merchant can charge. New York is not regulating what the price of the goods are. But the way to understand this statute, and I think this answers Justice Sotomayor's question as well, is that once the seller has chosen that price, which I agree they have a free choice about, then its ability to change that price for someone who uses a credit card is constrained. And I think this is easiest to understand in the scope of a single transaction. You walk into a store. They give you a menu with a list of prices for their food. Those prices are in large part unadorned by any conditions about when those prices apply. And you know in the course of that transaction between when you sit down and when you pay the bill, that those prices will be the prices charged to you, even if at the end of the transaction you take a credit card and pay for it. And you know I don't, because I know I have to pay sales tax. Well, you might have to pay a sales tax. And in every State I have to figure out what that sales tax is, and I've got to do the math in my own head. That's correct. And there are a lot of price adjustments that sellers could impose. You could have coupons, member discounts, et cetera. But I think those actually support our point here, because what do those price adjustments apply to? And at the end of the day, New York's position under the ordinary definition of a surcharge is all of those adjustments apply to the regular or starting price, the list price of a good or product. Kagan is narrow way in which this seems to affect communication, speech. I'm a seller. I set my prices. I say, I want to charge cash customers a dollar and I want to charge credit card customers a dollar five, all right? Now, if I put my list price as a dollar five and then the cash customers get a happy surprise, that seems fine. But if I put my list price as a dollar and then the credit card companies get a not-so-happy surprise, that can't be done. So it does affect the way a seller communicates which price he's going to say is the regular price, is the list price. So why isn't that a speech regulation? Now, you might say, as the Solicitor General does, it is a speech regulation, but it's only a disclosure regulation and subject to a lower standard. But you're saying it's not a speech regulation at all, and I want to know why, given that it is affecting which price you choose to say is your list price. So even if it does affect what a seller does, in that case, it's only because the list price is being used as evidence to support whether an imposition – whether a surcharge has been imposed later. And it's perfectly permissible under the First Amendment for conduct to be defined in relation to previous acts of speech. Conduct can be initiated, evidenced, or carried out through speech, and the First Amendment doesn't bar a State from regulating it in that way. And I'll just use a couple of examples that I think make this clear. Under a statute that says the seller shall adhere to a previously advertised price, that regulation, which, as the United States says, is an economic regulation, would be susceptible to the same analysis. If somebody wants to charge $100, they know that what they have to do is list $100 in their advertisements or in their stores. They can't list $98 or $95 or $90. And a similar example comes from this Court's decision in Rumsfeld v. Fair, which recognized that part of determining whether law schools had improperly excluded military recruiters from campus might be looking at the contents of e-mails or notices or other evidence of the underlying conduct of exclusion. And that's the only way that a seller's prices are being used here. It's being used as the benchmark to determine whether the seller has engaged in the unlawful conduct of increasing a previously disclosed price. Now, why this is clear under the statute, getting back to Justice Sotomayor's question, is in part because of the posture of this case. We have a set of Petitioners here who are bringing, as their counsel has acknowledged, an as-applied challenge. And if you look at the conduct that they want to engage in here, there is no ambiguity about what they think is the baseline or regular price. All of them want to be able to do that. Kennedy, Suppose that a business makes a point of its reputation as meeting all prices. We meet prices. And there is a business that's very close to another State, and the other State allows cash as an option where all surcharges are permitted and surcharges are disclosed. Then the State, the seller in this State, says, you know, we will charge the lowest price, we will meet the price, but we add 3 cents for credit cards. And because that's difficult to enforce, all of our prices are increased by 3 percent for everybody because of the difficulty of applying surcharges in some cases. Is that valid? I think it probably would be deemed to be a credit card surcharge in that case. Obviously, no court has addressed that specific question. It's not presented by any of the Petitioners here. And I don't mean to be evasive about it. I think that's an important point, because in an as-applied challenge, the relevant question is whether the statute can be applied to what the Petitioners want to do. And none of them want to engage in these complicated pricing schemes. All of them say the section plus Justice Breyer says that this is so complicated. Doesn't that indicate the statute is vague? It does not, because under the vagueness doctrine, under the Due Process Clause, as long as there are a core set of cases that people can understand, that's enough to sustain it, and especially when it is clear how it would apply in the context of the plaintiff's own allegations. And here again, and this is clearest from page 101 and 102 of the Joint Appendix, what the Petitioners here want to do, and what they will do the moment the statute is invalidated, is to list a single set of prices, a single set of prices for each of their goods and services, and then collect an additional amount on top for a surcharge. Now, it might be the case that other Petitioners or other plaintiffs would engage in more complicated pricing schemes, but the proper way to resolve those questions is in future as-applied cases if and when they arise. And one of the things that we can say from the enforcement history here is it's deeply unclear whether those cases will arise. Sellers first have to engage in those pricing schemes. Sotomayor, Well, they call this an as-applied challenge. I hope your adversary will confirm this, that they want to do these four things that's in the reply brief, one or the other. If we say these are okay, whatever else the law means, we're not reaching because this is an as-applied challenge. If we say they're okay or the New York State Court of Appeals say it's okay, it's okay, right? Yes. I think that's right. But you're saying more than this. You're saying this is how they advertise it, but that there's a further disclosure law that when a customer calls up the gas station, the gas station can't do any one of these four things and potentially other things, too, right? I don't think that's our argument. And I should clarify, I do think some of these schemes are not okay in the sense that you couldn't impose a credit card surcharge under some of these boxes. But if I'm understanding your question correctly, we are not saying no. I'm saying if we say it's okay. Right. But I know you're not claiming it is. But one point I want to respond to is the idea that what somebody says over the phone here can affect the underlying price structure. I mean, we treat the phone calls, including the phone calls in the enforcement history here, as just evidence of what the underlying prices are, in the same way that a printed placard itself, although an act of communication, would itself be evidence of the underlying prices. And there's no dispute here that when the heating oil representatives were describing their company's prices, they were describing a price scheme that they had settled upon in a reasonable way. I'm sorry. Does this apply to all merchants, anybody who sells anything? It does. There are limited exceptions for government entities who are not deemed to be sellers. Alito, I mean, suppose some kids have a lemonade stand or they're washing cars, and they say, for a glass of lemonade, $1.00, and then somebody comes up to them and says, I'd like to buy that with a credit card. It might happen today. I have never seen anybody younger than me buy anything with cash. But that would be a violation? If they put the $1.00 there on the assumption that everybody is going to pay cash for their lemonade? These are tech-savvy kids, so they can go process a credit card purchase if they wanted to. The statute has no exemption for kids selling lemonade. I think prosecutorial discretion would almost certainly be exercised in that situation. I can think of examples which I can't. In areas like energy, people who make their own energy, who use time-of-day metering, there could be lots of regulatory rules that affect how energy company presents the pricing of this element or that element included. If I think that in all these areas the correct First Amendment standard is rational basis, nothing stronger. How, then, do I distinguish the cases which have talked about how you what you say in respect to price, because, after all, even if it's just evidentiary, this statute does affect what people say as to price. So if, in fact, I need a legal distinction here to get at what I think the First  standards are, then I think that's the best effort. Well, they affect only what you say about price as an incident to preventing you from engaging in a certain pricing practice in the first instance. And I think this is the distinction this Court has drawn in cases like Virginia State Board of Pharmacy. I mean, that's a case about price advertisements. But the understanding there is that the advertisements are describing an underlying price that would be applied, for instance, if a consumer walked into a pharmacy and wanted to buy a prescription drug. And this case is about that consumer transaction. The descriptions of the prices are incidental to the regulation of the underlying consumer transaction and the price that the seller may impose here. And I think the point about the other regulations that may apply is also an important one in a couple of respects. I think the most important point of these other regulations is that they demonstrate that there are multiple ways in which the legislature or the Congress can address what happens to a default or regular price. And they all operate in tandem. The legislature could, for instance, say you can't do a credit card surcharge as here. They could also say you can't increase your prices at a car rental agency if you add an additional driver or if you have a car seat. And all of these would operate on the same underlying price structure. The starting point for all of these, as we've argued in our brief, would be the seller's regular or baseline price. And if we just say we agree with the government that this is speech because it affects how the merchant characterizes his price, would you also take the position that the government takes that it's justified as a disclosure law? We think that it can be. And in part that's because we agree with the government, with the Federal government, about the compliance options under this statute. It is true under both the New York law and the Federal law that the way a seller complies with this statute is to display a dollars and cents price that it later charges the credit card customers. Ginsburg. Well, can you explain to me how it's a disclosure requirement to suppress the actual cost of a credit card purchase? Well, it's not suppressing the actual cost of the credit card purchase. It's only preventing — well, I'll say two things. At most, it is preventing one way of conveying a credit card price. But the better way to look at it, as the government explains, is that it's just requiring a different price, a higher dollars and cents price for credit card customers to be displayed. Mr. Wu, on this, you think, is this not true, that the dual pricing scheme is legal? Is that right? That's correct. That was something that the Second Circuit did not decide, said it was abstaining on. It seems to me that that's quite relevant to this question of whether this is a disclosure requirement, because if the dual pricing scheme is not legal, it is really hard to characterize this as a disclosure requirement. Would you agree with that? I think that it would be. But I think it's important to recognize also why the Second Circuit abstained on this question. It didn't do so because it rejected our interpretation of the law, which would allow dual pricing. It did so because it found that the statute was readily susceptible to an interpretation that would allow dual pricing because of the clear indications that New York intended to follow the Federal statute. And so it wouldn't adopt an interpretation that would raise constitutional problems. And although we think this Court could adopt our interpretation of the State law, it would also be fair to recognize that there's no reason to deviate from the Federal statute on this front. But I also want to respond to one other point that Justice Ginsburg had raised, which is whether this suppresses information about credit card costs. And it does not in this important sense. Nothing about this statute prevents a seller from educating consumers about credit card costs, informing them about it, talking about it. Many of the Petitioners here do do so. Brooklyn Pharmacy, for instance, has told its customers not to use credit cards because of the additional costs that they impose. And they remain free to do so under this statute. And in an important sense, that speech is actually a better and more direct way of advocating about credit card costs in the mere imposition of a surcharge. You know, Expressions Hair Design, for instance, wants to impose a flat 3 percent surcharge without apparently any further speech here. And the difficulty with that as a message about credit card costs is, one, it doesn't explain why the surcharge is being imposed. Two, it doesn't say that it's being imposed because of a specific thing, known as a merchant interchange fee, the credit card issuer's charge. And three, it says nothing about the amount of the interchange fee. A flat 3 percent fee actually bears no relationship whatsoever to the actual costs, which range from 1.1 to 2.7 percent, that sellers actually incur when they pay. Sotomayor, there's nothing about this scheme that addresses that. This scheme has no disclosure requirement of what was your actual credit card charge versus what you're charging. The scheme does nothing to help that situation. Yang. If I could answer just this question. That's correct, but I think this supports our point. The scheme does not affect anything that sellers may say about their credit card costs. The very narrow thing that it does is to prohibit the imposition of a surcharge in a consumer transaction. And that to us is a classic economic conduct regulation. Robertson, Thank you, counsel. Mr. Gupta, a minute. Gupta, Thank you, Mr. Chief Justice. The Solicitor General agrees with us that this is a restriction of speech, but posits that the only thing that's left on the table is a disclosure rationale that New York abandoned in the courts below and is barely pressing here. And the problem with that is that this is a criminal speech restriction. And so if your merchant is faced with compliance, they've got to know, if you think this is a disclosure regime, what are we supposed to say? And typically, a disclosure regime doesn't leave you in the dark about what you have to say. The government tells you precisely what to say. And Zauderer recognized this problem. It said that there are serious constitutional problems if you have a disclosure regime that does not tell the merchant precisely what to say. Zauderer isn't a free pass. The government has hypothesized a regime that could exist, but if it did exist, it would still be subject to some First Amendment scrutiny. And you would have to ask of that regime the question that Chief Justice Roberts asked, which is, do we think people are too dumb to do math, and why in this one context do we think that? Could it be that it had something to do with suppressing the cost of credit cards? Thank you. Roberts. Thank you, counsel. The case is submitted.